UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VIVIANE G. BARTON,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____/

No. C 07-4137 PJH

**ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Viviane G. Barton ("Barton") seeks judicial review of the decision by the Social Security Commissioner ("Commissioner"), denying her claim for disability benefits pursuant to 42 U.S.C. § 405(g). This action is before the court on the parties' cross-motions for summary judgment, and Barton's alternative motion to remand. Having read the parties' papers and administrative record, and having carefully considered their arguments and relevant legal authority, the court REMANDS this case to the ALJ for further proceedings consistent with the court's order.

**BACKGROUND**

Barton filed an application for social security disability insurance ("SSDI") benefits on August 19, 2004. A.T. 71-74. At the same time, she also filed an application for supplemental security income ("SSI") benefits, but later withdrew the application. A.T. 18. She alleged disability beginning June 23, 2002. Id. The Commissioner denied her applications on December 9, 2004, and again upon reconsideration on April 22, 2005. A.T. 18, 29, 42. Administrative Law Judge Richard P. Laverdure ("the ALJ") held a hearing on October 11, 2006. A.T. 18. On November 15, 2006, the ALJ found that Barton had not

been disabled within the meaning of the Social Security Act from June 23, 2002 through the date of his decision. A.T. 15-25. That same day, Barton requested that the Appeals Council review the ALJ's decision. A.T. 5. The Appeals Council denied her request for review on June 29, 2007, making the decision of the ALJ the final decision of the Commissioner. Id. On August 10, 2007, Barton brought this action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's hearing, Barton was forty-nine years old and was participating in a Master's program. A.T. 14, 23. She had previously worked as a Human Resources Administrator for the University of California and as a Field Researcher for the United States Department of Education. A.T. 92, 103. Barton alleges both physical and mental impairments.

## STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act ("the Act") provides for the payment of disability insurance benefits to people who have contributed to the Social Security system and who suffer from a physical or mental disability. See 42 U.S.C. § 423(a)(1). To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis. 20 C.F.R. § 404.1520. The ALJ may terminate the analysis at any stage where a decision can be made that a claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At step one, the ALJ determines whether the claimant is engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits. See 20 C.F.R. § 404.1520(a)(4)(I). If not, at the second step, the ALJ must consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(a)(4)(ii). At the third step, the ALJ compares the claimant's impairment to a listing of impairments in the regulations. If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the listing, the claimant is presumed disabled and is awarded benefits. See 20 C.F.R. §

1  404.1520(a)(4)(iii).

2  If the claimant's condition does not meet or equal a listing, the ALJ must proceed to
the fourth step to consider whether the claimant has sufficient "residual functional capacity"
("RFC") to perform her past work despite the limitations caused by the impairment. See 20
C.F.R. § 404.1520(a)(iv). If the claimant cannot perform her past work, the Commissioner
must show, at step five, that the claimant can perform other work that exists in significant
numbers in the national economy, taking into consideration the claimant's "residual
functional capacity, age, education, and past work experience." See 20 C.F.R. §
404.1520(a)(4)(v).

Overall, in steps one through four, the claimant has the burden to demonstrate a
severe impairment and an inability to engage in his previous occupation. Andrews v.
Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995). If the analysis proceeds to step five, the
burden shifts to the Commissioner to demonstrate that the claimant can perform other
work. Id.

### ALJ'S FINDINGS

The ALJ determined that Barton was not disabled at step five of the disability
evaluation. A.T. 25. The ALJ first concluded that Barton had not engaged in any
substantial gainful activity since June 23, 2002. A.T. 20. At step two, the ALJ found that
she had the following severe impairments: "cervical disk disease, with herniation and
spondylosis, status post diskectomy and fusion, C5-7, and a major depressive disorder
without psychotic features." A.T. 20.

At step three, the ALJ concluded that Barton's spinal impairments did not meet the
requirements of Listing § 1.00, and her depressive disorder did not meet the requirements
of Listing § 12.04. A.T. 20. Specifically referring to Barton's depressive disorder, the ALJ
noted that Barton had only mild restrictions of her daily activities, moderate difficulties in
maintaining social functioning, and moderate difficulties in maintaining concentration,
persistence, or pace. Id.

The ALJ then turned to medical evidence in order to determine Barton's RFC. A.T.

3

21.     Dr. Martinet, from whom Barton sought treatment following her motor vehicle accident, ordered an MRI and reported on February 5, 2003 that Barton was precluded from heavy work, or work requiring repetitive motion with her neck, hands, or arms. Id. Dr. Guilford, who examined Barton on May 20, 2003, similarly determined that Barton could work, with the restriction that she could not do heavy work, nor work that involved repetitive motions of the neck, repetitive typing, posturing of the wrist in the extended position, or repetitive flexion and extension. Id. In 2004, Dr. Martinet noted that Barton's condition had worsened, with pain radiating down both arms, right greater than left, and he recommended surgery. Id. The surgeon, Dr. Weinstein, recommended on June 18, 2004 that Barton undergo a two level intercervical discectomy and fusion from C5-C7. Id.

On November 7, 2004, after the surgery, Barton visited Dr. Thunder, a consultative examiner. Id. Dr. Thunder determined that Barton could lift forty pounds occasionally and twenty-five pounds frequently, and stand and walk in one hour intervals for four hours in an eight-hour work day, with unlimited sitting. A.T. 22. He noted that she would likely return to her baseline functional status. Id.

Although Barton's physical therapist noted an improvement, Dr. Guilford, her chiropractor, reported on October 11, 2005 that her pain had not abated and therefore continued the previous work restrictions. Id. Three months later, Dr. Obeso, a psychologist, reported that Barton scored in the severe range for clinical depression on the Beck Depression Inventory-II and that she tended to overreact to real illness and exhibit symptoms somewhat dramatically as a means of gaining attention and support. Id.

After examining Barton once again on May 2, 2006, Dr. Guilford reported considerable improvement and noted that Barton was permanent and stationary. A.T. 23. He recommended a work restriction from heavy work, repetitive neck and head motions, typing, posturing of the wrist in the extended position, and repetitive flexion and extension. A.T. 23.

Turning to Barton's testimony, the ALJ did not find Barton's statements concerning the intensity, persistence and limiting effects of her symptoms to be entirely credible. Id.

4

The ALJ cited Dr. Obeso's opinion that Barton tends to over report her inability to function, which was supported in the record. A.T. 24. Her overly dramatic and demonstrative demeanor, lack of eye contact, and contradictory statements while testifying at the hearing, were among the factors that led the ALJ to conclude that although Barton had suffered an injury leaving her with certain functional limitations, those limitations were not to the extent that she alleged. Id.

As a result of Dr. Obeso's observations about Barton's tendency to exaggerate her symptoms, the ALJ accorded the opinion of Dr. Cadwell, Barton's friend and psychologist, less weight. A.T. 23. Dr. Cadwell reported that Barton continued to suffer from depression, but the ALJ essentially dismissed her opinion, noting that "much of her report is based on the claimant's subjective statements to her and not on a clinical examination or testing." Id.

In light of the above evidence, the ALJ determined that Barton had a RFC to lift and carry up to ten pounds frequently and up to twenty pounds occasionally; walk and/or stand six hours in an eight-hour workday; sit six hours in an eight-hour workday, with no repetitive fingering or repetitive overhead reaching, and no repetitive cervical rotation, flexion, or extension. A.T. 20. He further concluded that she must have the option to alternate between sitting and standing for up to five minutes each hour; she should be restricted to only occasional required interaction with the public; but in all other respects she was not functionally limited. Id.

Turning to step four, the ALJ found that Barton could not perform her past work as a human resources advisor and as an administrative assistant. A.T. 24. The ALJ based this determination on the vocational expert's opinion that an individual with Barton's RFC would not be able to perform these jobs because they both require repetitive neck movements and fingering. Id.

At the final step, the ALJ determined that Barton had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. A.T. 25. The vocational expert opined that an individual with Barton's age, education, past relevant work experience, and RFC could perform the

following jobs: (1) job development specialist (with 215,000 such jobs existing in the national economy and 15,000 in California); and (2) occupational analyst (with 75,000 such jobs existing in the national economy and 2,000 in California).  Id.  Accordingly, although Barton's limitations do not allow her to perform the full range of light work, after considering her age, education and transferable work skills, the ALJ concluded that Barton was "not disabled" pursuant to Medical-Vocational Rules 202.14 and 202.22.  A.T. 25.

## STANDARD OF REVIEW

This court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the ALJ's findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence" means more than a scintilla, but less than a preponderance, or evidence which a reasonable person might accept as adequate to support a conclusion.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision.  Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1991) (citing Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984).

When the Appeals Council denies review after evaluating the entire record, including newly submitted evidence, that new evidence becomes a part of the administrative record to be reviewed by this court on appeal.  See Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993).  Thus, this court must consider the evidence before both the ALJ and the Appeals Council in reviewing the ALJ's decision.  Id.

## ISSUES

Barton seeks review of the Commissioner's denial of SSDI benefits, arguing that:

    (1)    The ALJ failed to give clear and convincing reasons for discrediting her testimony;

    (2)    The ALJ did not consider the treating physician's opinion of disability;

    (3)    The ALJ failed to consider her diagnosed pain disorder when assessing her RFC;

    (4)    The ALJ did not provide adequate reasons for rejecting the lay witness statements;

    (5)    The ALJ failed to meet the narrative discussion requirements for assessing RFC;

    (6)    The vocational expert's testimony is not supported by the record; and

    (7)    The court should order the Commissioner to pay benefits.

## DISCUSSION

**1.   The ALJ provided clear and convincing reasons to support his finding that Barton's testimony was not entirely credible.**

First, Barton argues that the ALJ did not provide clear and convincing reasons for discrediting her testimony.

The ALJ must give careful consideration to any evidence of symptoms because subjective descriptions may better indicate severe limitations or restrictions than medical evidence alone. Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (internal quotations omitted). "When giving such consideration, if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." Id. at 883.

While an ALJ may find testimony partially or wholly not credible, he may not disregard it solely because the objective medical evidence does not affirmatively substantiate the testimony. Id. "Moreover, unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Id. "To find the claimant not credible, the ALJ must rely either on reasons unrelated to the

subjective testimony (e.g., reputation for dishonesty), conflicts between his testimony and his own conduct, or internal contradictions in that testimony." Id. at 884.

In Rollins, the reviewing court found that the ALJ's specific reasons for not fully crediting the claimant's testimony were sufficient. 261 F.3d 853, 857 (9th Cir. 2001). First, when the claimant was discharged from the Behavioral Medical Center after treatment for addiction to pain killers, the doctors discharging her found that she had "no restrictions on activity" and indicated that she had only mild symptoms and generally quite adequate function. Id. Second, the claimant's assertion of totally disabling pain was undermined by her own testimony about her daily activities, such as attending to all the needs of her two young children, cooking, housekeeping, laundry, shopping, and attending various meetings each week. Rollins, 261 F.3d at 857. The Ninth Circuit concluded that while the ALJ's interpretation of the claimant's testimony may not have been the only reasonable one, it was still a reasonable interpretation supported by substantial evidence. Thus, the court determined it was "not [its] role to second-guess" the ALJ's determination. Id.

Similar to Rollins, here the ALJ did not make an affirmative finding of malingering and was therefore required to provide specific reasons supporting his determination that Barton's testimony was not fully credible. The ALJ stated the following reasons for according less weight to Barton's testimony. First, as in Rollins, the claimant undermined her own claim that she could not be around other people by stating that she could participate in an intensive classroom-based Masters program. Although Barton argues that she explained how the classroom environment differs from an employment setting because her learning environment allowed her to be "emotive," the ALJ's interpretation of these somewhat contradictory actions was reasonable. See id. (the ALJ's interpretation of claimant's testimony need not be the *only* reasonable interpretation, as long as it is *a* reasonable interpretation).

Second, the ALJ pointed out that Dr. Obeso, one of the psychologists who examined Barton, observed in his report that "the claimant tends to over report her inability to function." A.T. 24. This, too, is a specific reason, independent from Barton's subjective

8

testimony, for finding the testimony to be not credible. See Robbins, 466 F.3d at 884 (In determining credibility, the ALJ must rely on reasons unrelated to the claimant's subjective testimony, such as reputation for dishonesty.).

Finally, the ALJ noted that despite Barton's claim of severe symptoms, she has managed without pain medications. Although Barton argues that her treating physician, Dr. Padgett, advised against using medication, Pl.'s Opening Brief at 13, in his report Dr. Padgett stated, "It is my inclination, as is the patient's, not to use any medication." A.T. 319. Because this statement demonstrates that Barton personally chose not to use medication, the ALJ's inference that the failure to take pain medication indicated less than severe symptoms was reasonable. See id. Accordingly, the ALJ has made a specific finding that Barton's testimony regarding the severity of her symptoms is not entirely credible, and has supported that finding with clear and convincing reasons.

2. **The ALJ improperly ignored Dr. Padgett's opinion of disability.**

Next, Barton contends that the ALJ failed to consider the opinion of Dr. Padgett, her treating physician, that she was disabled.

An ALJ should give more weight to a treating doctor's opinion than the opinions of doctors who do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). More specifically,

> [w]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record. . . . Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. . . . This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Reddick, 157 F.3d at 725 (internal quotations omitted).

Barton contends that Dr. Padgett opined that she was disabled. In reaching this conclusion, Barton points to the section of Dr. Padgett's report that reads,

> [Barton] has become debilitated both emotionally and psychologically and that immersion into an interdisciplinary functional restoration program is her best option of ever regaining the ability to be competitive in the open-labor market. . . . It is our belief that through immersion into extensive pain management education as well as conditioning training and resumption of self-care skills through a class and individual setting that Vivian can once again be employable. A.T. 344.

In opposition, the Commissioner contends that the above statements are merely suggestions by Dr. Padgett that Barton was unemployable and could not compete in the "open-labor market." Def.'s Opp. 6. The Commissioner argues that such statements are not medical opinions pursuant to 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1), but rather vocational opinions which were outside of the medical expertise of Dr. Padgett. Thus, the Commissioner argues, the ALJ was not required to accord them any weight. Def.'s Opp. 7.

The above quoted statements by Dr. Padgett are ambiguous as to whether they are merely the doctor's finding regarding Barton's disability or employability, or medical opinions discussing the "nature and severity of [Barton's] impairments." See 20 C.F.R. § 416.927(a)(2). The ALJ can ignore the former, but must consider the latter. Compare C.F.R. § 416.927 (e)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled."), with 20 C.F.R. § 416.927(b) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record").

The ALJ is required to explain "how any material inconsistencies or ambiguities in the case record were considered and resolved." Social Security Ruling 96-8p. However, the ALJ seems to have ignored Dr. Padgett's opinion. In fact, the only reference to Dr. Padgett appears in a single sentence: "The claimant continued physical therapy with Dr. Padgett." A.T. 22. Thus, the ALJ has failed to set forth his own interpretations and explain why they, rather than Dr. Padgett's, are correct. See Reddick, 157 F.3d at 725 (requiring the ALJ to explain why his own interpretations were correct rather than those of the treating physician, even where the treating physician's opinion is contradicted by other evidence).

Accordingly, the court remands for further consideration of Dr. Padgett's opinion of disability and an explanation as to what if any weight has been accorded that opinion.

**3.    The ALJ failed to consider Barton's diagnosed pain disorder when assessing her RFC.**

Barton further contends that the ALJ failed to consider her diagnosed pain disorder in determining her RFC.

In assessing RFC, the ALJ must consider all of the individual's impairments that impose limitations and restrictions, even those which are not severe. Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) (citing Social Security Ruling 96-8p).  While a 'not severe' impairment may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." Id.

"[P]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone." 20 C.F.R. § 404.1545(e).  For example, one individual with a low back disorder may be able to carry out the physical demands of sustained medium work activity, while someone with the same disorder and an increased level of pain may only manage to perform the physical demands consistent with light work activity on a sustained basis. Id.

Dr. Obeso diagnosed Barton with "Pain Disorder Associated with Both Psychological Factors and a General Medical Condition, Chronic." A.T. 353.  Pain disorder is a recognized mental disorder, the essential feature of which is "pain that is the predominant focus of the clinical presentation and is of sufficient severity to warrant clinical attention." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 498 (4th ed. 2000).  Other diagnostic criteria include (1) that the pain cause "significant distress or impairment in social, occupational, or other important areas of functioning;" (2) that psychological factors are determined to play a significant role "in the onset, severity, exacerbation, or maintenance of the pain;" and (3) that the pain "is not intentionally produced or feigned." Id.  Pain disorder may result in an inability to work or attend school,

11

frequent use of the health care system, and the pain becoming a major focus of the individual's life. Id.

Despite Dr. Obeso's diagnosis, the ALJ did not mention the pain disorder anywhere in his decision. Nevertheless, Barton exhibited several of the above criteria. For example, Barton testified that she did not feel that she could work in a normal work setting due to the pain she experiences. A.T. 392-93. While the ALJ explained his reluctance to place much weight on Barton's testimony, his ultimate conclusion may have differed had he considered Dr. Obeso's diagnosis of pain disorder. As explained above, the purpose of requiring an ALJ to consider all impairments is to ensure the inclusion of an impairment which is not necessarily severe but which may impact the claimant's overall condition. Celaya, 332 F.3d at 1182. Accordingly, the court remands so the ALJ can consider Barton's pain disorder in determining her RFC, and articulate how, if at all, it affects his RFC determination.

**4.     The ALJ failed to give adequate reasons for rejecting the lay witness' statements.**

Next, Barton argues that the ALJ did not adequately explain his refusal to accord significant weight to the testimony of two lay witnesses whose statements appear in the record. In determining whether a claimant is disabled, an ALJ must consider lay witness testimony regarding a claimant's ability to work. Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). "Indeed, lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment. . . . Consequently, if the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Id. (internal quotations omitted).

The record in this case includes the statements of two lay witnesses, Dr. Cadwell, who has a Ph.D. in psychology and is a friend of Barton's, and Dr. Shpiesel, a licensed acupuncturist who treated Barton. Dr. Cadwell, the first of the lay witnesses, stated that she has witnessed "a deterioration in [Barton's] functioning over the last five years." A.T.

12

160. In support of this statement, Dr. Cadwell notes that Barton is often anxious and tearful, has had difficulty focusing on simple conversations, and is often confused and unable to concentrate. Id. Based on her professional experience and the above observations, Dr. Cadwell concluded that Barton had become depressed. A.T. 160-61.

The ALJ's rejection of Dr. Cadwell's testimony regarding the severity of Barton's symptoms and limitations is not supported by substantial evidence. The ALJ stated:

> While I can appreciate Dr. Cadwell's concern for her friend, and her professional observations and opinion, it appears that much of her report is based on the claimant's subjective statements to her and not on a clinical examination or testing. I therefore do not accord this opinion significant weight. . . . A.T. 23.

Barton correctly points out that contrary to the ALJ's above statement, many of Dr. Cadwell's statements are in fact based on behaviors she witnessed or observed, rather than subjective statements made by Barton. Furthermore, the ALJ's objection that Dr. Cadwell's report was not based on examination or testing seems misplaced, as her letter was intended as lay testimony, not a psychological evaluation.

Dr. Shpiesel, the second lay witness, stated that Barton's pain caused nausea, loss of appetite, constant headache, and inability to work. A.T. 219-20. The ALJ did not mention Dr. Shpiesel's statements once in his opinion. This unexplained dismissal of a lay witness' testimony fails to meet the standard which the Ninth Circuit recently set forth. Stout, 454 F.3d at 1053 (holding that a lay witness' testimony regarding a claimant's ability to work cannot be dismissed without comment). Accordingly, the court finds that the ALJ improperly ignored the testimony of both lay witnesses and failed to provide adequate reasons for doing so. Thus, remand is warranted on this ground as well.

**5.    The ALJ did not meet the narrative discussion requirements for assessing Barton's RFC.**

Next, Barton argues that the ALJ did not meet the narrative discussion requirements in assessing her RFC.

"The [ALJ's] RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

13

findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96-8p.[1] This discussion must address "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis[,] . . . the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record," and "how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id.

A district court cannot affirm an ALJ's decision based on evidence that the ALJ did not discuss in his written report. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); see also 42 U.S.C. §§ 405(g), 1631(c)(3) (the court can review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely). The rationale behind this rule is that "requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review." Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir. 1996). A district court cannot affirm conclusory determinations from an ALJ which are not "supported by specific findings and reasonings." Robbins, 466 F.3d at 885.

Barton points to several aspects of the ALJ's opinion which she alleges fail to meet the narrative discussion requirements. First, Barton argues that the ALJ failed to discuss the medical evidence that conflicted with his conclusion, such as the HELP program[2] limitations, the physical therapist's recommendations, and Dr. Obeso's diagnosis of pain disorder. With respect to the HELP program, the ALJ stated that Barton participated in the program and that "on her discharge from that six-week program, it was noted that she was limited in her progress in the program by her fear of increasing pain. She was noted to improve in her range of motion by about 20%, which was expected to improve further as

---

[1] Social Security Rulings are not binding; rather, they are the agency's interpretation of the statute and regulations. However, the Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations." Chavez v. Dept. of Health and Human Servs., 103 F.3d 849, 851 (9th Cir. 1996).

[2] The Health Education for Living with Pain Program ("HELP") is an interdisciplinary pain rehabilitation program that helps individuals regain control of their lives after experiencing disease or injury. Health Education for Living with Pain, About HELP, www.helppain.net (last visited October 10, 2008).

14

she is able to 'go beyond her fears.'" A.T. 22. Nevertheless, the HELP program discharge report indicates a capacity for standing of forty-five minutes and a lifting capacity of fifteen pounds. A.T. 336. Dr. Padgett noted in a letter to Barton's attorney that while Barton was a patient at HELP, his clinical staff directly observed the limitations stated in the HELP report, seemingly indicating his agreement with the limitations. A.T. 326. However, the ALJ did not discuss these limitations.

On a similar note, the ALJ also failed to reference in his discussion the physical therapy limitations contained in the record. Ida Hirst, a physical therapist who treated Barton, reported in April 2006 (after Barton had completed the HELP program) that Barton could walk fifteen minutes for exercise up to five times a day, but needed to avoid lifting or carrying tasks because they aggravated her symptoms. A.T. 357. The ALJ also ignored these limitations without comment.

Although not directly raised by either party, the record reflects an apparent inconsistency between Dr. Obeso's diagnosis of pain disorder and his comments regarding the credibility of Barton's subjective symptoms and complaints. Although the ALJ did discuss Dr. Obeso's credibility comments in deciding to accord Barton's testimony less weight, the ALJ did not discuss his diagnosis of pain disorder, which provides an alternative explanation for Barton's excessive complaints about her symptoms. The court therefore remands to require the ALJ to explain the discrepancy in Dr. Obeso's opinion and articulate why he accepted the doctor's credibility observations and diagnosis of major depression, but ignored his pain disorder diagnosis.

Furthermore, as noted above, the ALJ did not explain his reasons for ignoring Dr. Padgett's opinion of disability and instead finding that Barton was not disabled. While "[i]t is not necessary to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence," Magallanes, 881 F.2d at 753, the ALJ was required to explain his decision to resolve a conflict in favor of his own conclusion rather than that of Barton's treating physician. See Reddick, 157 F.3d at 725; see also Social

15

Security Ruling 96-8p. Accordingly, the court finds that these oversights render the ALJ's narrative discussion incomplete.

Next, Barton contests the ALJ's failure to include in his ultimate RFC analysis his earlier conclusion that Barton experiences "moderate difficulties in maintaining concentration, persistence or pace." See A.T. 20. This finding, however, was part of the ALJ's preliminary analysis rather than his assessment of Barton's functional limitations. See 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will *then* assess your residual functional capacity."). Therefore, contrary to the above deficiencies, the court finds that the ALJ did not err in excluding his preliminary finding from his ultimate analysis.

Finally, Barton contends that the ALJ's narrative discussion did not account for evidence of her "emotional ability and frequent crying." This argument, however, lacks merit because the ALJ did indeed justify his decision to accord this evidence less weight. A great deal of the evidence of Barton's subjective emotions and her ability to deal with those emotions derived from her own testimony, which the ALJ properly discredited. While some of the other medical evidence also described Barton's emotional state, the court may only evaluate the ALJ's narrative discussion based upon the evidence he did consider, rather than all the evidence that was available in the record. Connett, 340 F.3d at 874. Here, the ALJ used evidence to support his conclusion that Barton's testimony regarding her subjective pain deserved less weight. Nevertheless, although the ALJ satisfied the applicable standard in regard to this particular section of the opinion, overall, the court finds that the ALJ's narrative discussion fails to meet the requisite standard.

**6.    The ALJ's hypotheticals were incomplete, thereby rendering the vocational expert's testimony unreliable.**

Barton contends that the vocational expert's testimony did not constitute substantial evidence supporting the ALJ's decision.

"Hypothetical questions posed to [a] vocational expert must set out *all* the limitations and restrictions of the particular claimant" that are supported by substantial evidence. Magallanes, 881 F.2d at 756 (internal quotations omitted). "The testimony of a vocational expert is valuable only to the extent that it is supported by medical evidence. . . . The expert's opinion about the claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record." Id.

In Robbins, the claimant challenged the hypothetical the ALJ posed to the vocational expert on grounds that it excluded some of his functional limitations. 466 F.3d at 885-86. The court found that due to the fact that the ALJ had improperly discounted the testimony of the claimant and his son, the hypothetical question posed to the vocational expert was "legally inadequate." Id. at 886. "Such a failure cannot be deemed harmless because, if the ignored testimony is credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert's recommendation to the ALJ." Robbins, 466 F.3d at 886.

Here, the ALJ posed two hypotheticals to Davis, the vocational expert. A.T. 398-99. In the first hypothetical, the ALJ asked Davis to consider two limitations: no repetitive fingering and no overhead reaching. A.T. 398. In the second hypothetical, the ALJ asked Davis to consider, along with the limitations in the first hypothetical, that Barton's required interaction with the public be limited to occasionally. A.T. 399. Davis concluded that based upon the two hypothetical limitations, an individual could perform the roles of Job Development Specialist and Occupational Analyst.

However, in determining Barton's RFC, the ALJ improperly rejected lay witness testimony and failed to consider Dr. Obeso's diagnosis of pain disorder. Had the ALJ included these factors in his hypothetical question to Davis, Davis' recommendation may have differed. Accordingly, Davis' opinion is not supported by the record, as he used an incomplete description of hypothetical limitations in determining the jobs Barton could perform.

### 7. The court remands this case for further proceedings.

The final issue is whether the court should remand the case for further proceedings or simply award benefits. The decision whether to remand a case for additional evidence or award benefits is within the discretion of the court. Reddick, 157 F.3d at 728. A remand for further proceedings is unnecessary where the record is fully developed and there are no outstanding issues that must be resolved before a proper disability determination can be made. Varney v. Sec'y of Health and Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988); see also Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989) (directing an award of benefits where further proceedings would serve no useful purpose).

Further proceedings are necessary to consider Dr. Padgett's opinion, as the ALJ did not provide sufficient reasons for rejecting the opinion. In Lester, the ALJ rejected the opinion of an examining psychologist based on the conflicting testimony of a medical advisor who had not examined the claimant, and also because the psychologist's opinion was based on limited observation. Lester, 81 F.3d at 832. The Ninth Circuit found that these reasons were insufficient. Id. at 834.

Similarly, in Widmark, the ALJ rejected the opinion of an examining physician because of (1) an inconsistency in the report; (2) a lack of corroborating evidence in the record; and (3) the claimant's failure to mention the specific disability in question in his disability claim. Widmark, 454 F.3d at 1067. The Ninth Circuit also found these reasons to be inadequate. Id. at 1069.

In this case, the ALJ's bases for rejecting Dr. Padgett's opinion were even less substantial than those of the ALJs in Lester and Widmark. As discussed above, the ALJ here provided no explanation for rejecting the opinion. A.T. 22. Accordingly, on remand, the ALJ should consider Dr. Padgett's opinion in his analysis.

Further proceedings are also necessary to resolve the inconsistency in Dr. Obeso's opinion regarding his pain disorder diagnosis and his observation that Barton may be over reporting her symptoms. The ALJ did not explain why the pain disorder did not contribute to Barton's apparently excessive reporting of symptoms; he simply concluded that Barton

was exaggerating and was therefore less credible. Thus, on remand, the ALJ should consider the pain disorder diagnosis.

Additionally, the ALJ should either explain further his decision to discount the lay testimony of Dr. Cadwell and Ida Hirst, or factor their observations into his RFC analysis. If he decides to consider these opinions in his analysis, the hypothetical questions posed to the vocational expert may include additional limitations and thus result in different potential employment opportunities or restrictions for Barton.

Once the ALJ has considered the above evidence on remand, he should present to the vocational expert a new hypothetical that reflects any changes in Barton's RFC.

## CONCLUSION

For the foregoing reasons, the court REMANDS this case for further proceedings. Specifically, the court finds that (1) the ALJ did provide clear and convincing reasons to support his finding that Barton's testimony was not entirely credible; (2) the ALJ nevertheless improperly ignored Dr. Padgett's opinion of disability; (3) the ALJ should have considered Dr. Obeso's diagnosis of pain disorder in assessing Barton's RFC; (4) the ALJ failed to adequately explain his rejection of the lay witness' statements; (5) the ALJ did not meet the narrative discussion requirements for assessing Barton's RFC; and (6) the ALJ's hypotheticals to the vocational expert were incomplete and therefore the vocational expert's conclusions are not reliable.

This order fully adjudicates the motions listed at numbers sixteen and seventeen of the clerk's docket for this case. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 22, 2008

PHYLLIS J. HAMILTON
United States District Judge

19